UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

August 22, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Shawna G. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
      Civil No. 23-2677-CDA

Dear Counsel:

On October 3, 2023, Plaintiff Shawna G. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 14 and 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on December 7, 2016, alleging a disability onset of January 6, 2016. Tr. 156-65. Plaintiff's claims were denied initially and on reconsideration. Tr. 120-23, 127-28. On February 19, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 43-66. Following the hearing, on March 27, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 24-42. The Appeals Council denied Plaintiff's request for review, Tr. 15-20, so the ALJ's decision constituted the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

Plaintiff appealed to this Court on June 9, 2020. Tr. 602-610. On July 9, 2021, this Court remanded Plaintiff's case to the Commissioner for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g). Tr. 618. The Appeals Council on August 31, 2021, vacated the final decision of the Commissioner and remanded Plaintiff's case to an ALJ

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on October 3, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

for further proceedings. Tr. 619-24. A second hearing occurred on February 23, 2022. Tr. 549-76. On March 18, 2022, the ALJ denied Plaintiff's claims for disability. Tr. 524-48. Plaintiff filed a second appeal within this Court, and on February 17, 2023, this Court again remanded Plaintiff's case. Tr. 1355-56. The Appeals Council remanded the case to an ALJ for further proceedings and on April 19, 2023 a third hearing occurred. Tr. 1256-1300. On July 5, 2023, the ALJ denied Plaintiff's claims for disability; Plaintiff seeks a review for a third time. Tr. 1225-53.

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since December 7, 2016, the application date[.]" Tr. 1231. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative joint disease of the knees with chondromalacia bilaterally; chronic kidney stones, status post left nephrectomy; obesity; major depressive disorder; post-traumatic stress disorder (PTSD); panic disorder; bipolar disorder; generalized anxiety disorder; agoraphobia; and borderline personality disorder[.]" Tr. 1231. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "asthma; allergic rhinitis; obstructive sleep apnea; migraine headaches; hypothyroidism with right thyroid nodule; gastroesophageal reflux disease (GERD); hypertension; insomnia [sic]." Tr. 1232. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 1232. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) with the following limitations: no climbing or crawling and no more than occasional balancing, crouching, kneeling or stooping, as those are defined in the DOT/SCO; no exposure to weather, no more than occasional exposure to non-weather temperature extremes of heat or cold, to wetness and non-weather humidity, to vibration, or to atmospheric conditions, and no exposure to hazards, as those are each defined in the DOT/SCO; can understand, remember and carry out simple instructions; no work that requires a specific production rate pace, such as assembly line work or an hourly production quota; can occasionally deal with changes in a routine work setting; no more than occasional simple decision making; no contact with the public; no more than

>occasional interaction with co-workers and supervisors; and once work is assigned, it should be able to be performed primarily without working in coordination with other employees.

Tr. 1234. The ALJ determined that Plaintiff was unable to perform past relevant work as a Customer Service Representative (DOT[3] #239.362-014) and Relay Operator (DOT #235.662-022) but could perform other jobs that existed in significant numbers in the national economy. Tr. 1243-44. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 1245.

### III.  LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.  ANALYSIS

Plaintiff argues that the ALJ erred by (1) failing to properly support their RFC determination, (2) failing to adequately explain the determination that Plaintiff's conditions did not meet or equal the requirements of Listings 12.04, 12.06, and 12.15 under the Paragraph C criteria; and (3) disregarding a third-party function report authored by Plaintiff's fiancé, Michael Wolhschlager ("Mr. Wolhschlager"). ECF 11, at 9, 18, 29. Defendant counters that the ALJ properly (1) supported the RFC determination by including "production rate pace"; (2) considered Plaintiff's impairments and found that they did not meet or equal the Paragraph C requirements of Listing 12.04, 12.06, and 12.15; and (3) considered Plaintiff's third-party statement from Mr. Wolhschlager. ECF 14, at 7, 15, 20. For the reasons set forth below, this Court finds that the ALJ substantially supported their decision and remand is not warranted.

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Shawna G. v. O'Malley*
Civil No. 23-2677-CDA
August 22, 2024
Page 4

      A.  <u>The ALJ properly supported their RFC limitation by including a supporting explanation.</u>

      Plaintiff argues that the RFC is unsupported because the ALJ failed to include a narrative discussion when determining that Plaintiff is precluded from "work that requires a specific production rate pace, such as assembly line work or an hourly production quota." ECF 11, at 11. Plaintiff contends that the ALJ failed to connect this RFC provision to Plaintiff's moderate concentration, persistence, and pace ("CPP") limitation, making it "unclear whether this RFC limitation was even intended to accommodate Plaintiff's mental impairments." *Id.* at 10. Because "the decision is missing any explanation as to how the ALJ decided that those particular limitations would be sufficient to accommodate Plaintiff's symptoms," Plaintiff asserts that the Court cannot meaningfully review the ALJ's decision. *Id.*

      A claimant's RFC is "the most [they] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In assessing the RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

      When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas—CPP—concerns "the abilities to focus attention on activities and stay on task age appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c). "[O]nce an ALJ has [found] that a claimant suffers from moderate difficulties in [CPP], the ALJ must either include a corresponding limitation in [their] RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec. Admin*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)), *report and recommendation adopted*, (D. Md. June 5, 2015).

      Here, the ALJ first determined that Plaintiff had a moderate CPP limitation. Tr. 1234. The ALJ then discussed their decision to include the pace limitation in the RFC by stating:

> [o]verall, the above residual functional capacity assessment accommodates the claimant's mental impairments by limiting the complexity of instructions; the **pace of work**; the changes and decision making in a routine work setting; and the claimant's interaction with others. Such limitations are reasonably expected to reduce the situations that exacerbate and worsen the claimant's mental impairment symptoms. Reducing the complexity of tasks and pace of work accommodates the claimant's moderate deficits in understanding, remember, and applying

> information, **as well as the moderate deficits in concentration, persistence, and maintaining pace**. Reducing the frequency of changes in the work setting and the need for decision making **accommodates the claimant's moderate limitations in concentrating, persisting, and maintaining pace**, as well as her moderate limitations in her ability to adapt and manage herself. Finally, limiting the claimant's interaction with others accommodates her moderate deficits in interacting with others, including that she is precluded from interacting with the public and is limited to no more than occasional interaction with coworkers and supervisors without any work in coordination with other employees. The residual functional capacity assessment thoroughly accommodates all of the claimant's moderate mental limitations found above.

Tr. 1240 (emphasis added). Here, the ALJ explicitly provided a discussion for the inclusion of the pace limitation for Plaintiff's moderate CPP. This discussion permits meaningful review. Additionally, Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. *See generally* ECF 11. Accordingly, remand is unwarranted because the Court's review is not "frustrate[d]" by "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636.

> B. <u>The ALJ did not err when assessing Plaintiff's mental impairments under the Paragraph C criteria.</u>

The SSA's "Listing of Impairments" describes, "for each of the major body systems[,] [the] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity[.]" 20 C.F.R. § 416.925(a). At step three of the sequential evaluation process, an ALJ determines whether a claimant has an "impairment[] that meets or equals" a listed impairment (a "Listing"). 20 C.F.R. § 416.920(a)(4)(iii). If the ALJ finds that the claimant's impairment meets or equals a Listing, the ALJ must find that the claimant is disabled. *See id.*

Relevant to this case, Listings 12.04, 12.06, and 12.15 pertain to "Depressive, bipolar and related disorders," "Anxiety and obsessive-compulsive disorders," and "Trauma- and stressor-related disorders," respectively. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06, 12.15. The criteria relevant to meeting or equaling each of these Listings is delineated in three separate sections ("Paragraphs") set forth at each Listing. The first Paragraph ("Paragraph A") requires documentation of certain medical criteria. *See id.* §§ 12.04A, 12.06A, 12.15A. The second Paragraph ("Paragraph B") is identical in all three Listings and requires the "[e]xtreme limitation of one, or marked limitation of two," of four "areas of mental functioning," which include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* §§ 12.04B, 12.06B, 12.15B. The third Paragraph ("Paragraph C") is identical in all three Listings and requires a claimant's mental disorder to be "serious and persistent," meaning that the claimant must have "a medically documented history of the existence of the disorder over a period of at least 2 years," as well as:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly

> structured setting(s) that is ongoing and that diminishes [a claimant's] symptoms and signs of [their] mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life (see 12.00G2c).

*Id.* §§ 12.04C, 12.06C, 12.15C. Listings 12.04, 12.06, and 12.15 can each be met or equaled by: (1) satisfying the respective Listings' Paragraph A and Paragraph B criteria or (2) satisfying the respective Listings' Paragraph A and Paragraph C criteria. *See id.* §§ 12.04, 12.06, 12.15.

Here, the ALJ determined that Plaintiff suffered from the severe mental impairments of major depressive disorder, PTSD, panic disorder, bipolar disorder, generalized anxiety disorder, agoraphobia, and borderline personality disorder. The ALJ then examined whether Plaintiff's mental impairments met or medically equaled the criteria at Listings 12.04, 12.06, and 12.15. Tr. 1231, 1234. The ALJ did not make a finding for Paragraph A. With respect to the Listings' Paragraph B criteria, the ALJ found that because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the Paragraph B criteria relevant to Listings 12.04, 12.06 and 12.15 was not satisfied. Tr. 1233.

Plaintiff challenges the Paragraph C assessment,[4] arguing that the ALJ failed to adequately explain, at step three, why Plaintiff's mental impairments did not satisfy the criteria relevant to Listings 12.04, 12.06, or 12.15. ECF 11, at 18. To determine whether the ALJ's step-three findings are supported by substantial evidence, the Court reads the ALJ's decision "as a whole." *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (per curiam). With respect to the Paragraph C criteria, the ALJ did not explicitly make a finding for Paragraph C(1). But this is not where Plaintiff assigns error; Plaintiff noted that the ALJ "implicitly concluded that Plaintiff has satisfied the Paragraph C(1) requirements[.]" ECF 11, at 22. The Court agrees, as the ALJ discusses Plaintiff's treatment throughout the years. Tr. 1233-1242.

Plaintiff finds inadequate, and thus reversible, the ALJ's Paragraph C(2) discussion as it relates to Plaintiff's daily activities. ECF 11, at 22-23. The Court, however, does not. Reading this decision as a whole, the Court finds that the ALJ properly discussed the Paragraph C(2) criteria. The ALJ concluded that Plaintiff did not meet the Paragraph C(2) criteria because the "record [did] not establish that [Plaintiff] ha[d] only marginal adjustment, that is, a minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life." Tr. 1234. The ALJ supported this finding by discussing that Plaintiff took care of her mother by helping her clean and cook meals, addressed personal care issues without problems, prepared meals, completed household chores, operated a vehicle, shopped in stores, handled her finances, followed written and spoken instructions well, and had never been fired or laid off from a job because of problems getting along with others. Tr. 1234. Plaintiff argues that the ALJ simply listed her activities rather than "consider the complete picture of Plaintiff's daily

---

[4] On appeal, Plaintiff raises no objection to the ALJ's review of the Paragraph A or Paragraph B criteria of these Listings. *See* ECF 11, at 18-29.

functioning." ECF 11, at 25. However, the ALJ included in their decision Plaintiff's testimony regarding her mental impairments. Plaintiff testified that her most limiting impairment is her agoraphobia with fear of leaving the house and her panic disorder with panic attacks. Tr. 1235. Plaintiff noted an inability to leave her home except for appointments and that she can barely cook for herself. Tr. 1235-36. However, the ALJ highlighted that Plaintiff acknowledged as true a statement from her mental health provider at the hearing: that she was doing well with only periodic flashbacks, taking care of her mother, and spending time with her stepchildren. Tr. 1236.

The ALJ further discussed that "[m]ental health treatment records make few, if any, references to agoraphobia and panic symptoms and [did] not document that [Plaintiff] has reported an inability to leave her home." Tr. 1241. Although mental health provider Jerilyn Jackson indicated that Plaintiff had increased agoraphobia, "the record [did] not contain any treatment records from that provider or office, and it does contain evidence the [Plaintiff] has continued to see physicians in person with little to no mention of an inability to leave her home." Tr. 1241. Additionally, Plaintiff "agreed at the April 2023 hearing with chart notes from around April 2022 that she was doing well[.]" Tr. 1241. Records from March 2022 "document that [Plaintiff] was good, that her relationships were going well, and that she was amazing and proud of herself especially for being able to talk about hard things[.]" *Id.*

The ALJ observed that Plaintiff's mental health treatment notes supported the symptoms she alleged, but "when even present, [the symptoms] did not cause more than moderate functional deficits." Tr. 1240. For example, "mental health treatment records from 2020, 2021, 2022, and 2023 document that [Plaintiff's] mental status was within normal limits despite her reported symptoms including, that she generally presented with good concentration, no deficits in memory, at least fair insight, good impulse control, and good judgment, and that she was compliant with her medications." Tr. 1240; *see, e.g.*, *Brown v. Colvin*, No. 14-0572, 2015 WL 5098420, at *7 (W.D.N.C. Aug. 31, 2015) ("The ALJ properly concluded that Plaintiff's complaints were not entirely credible because her allegations of totally disabling symptoms were inconsistent with other evidence, including medical opinions . . . ."). The ALJ concluded that there was no basis for a finding that Plaintiff "is more limited than set forth in the [RFC] or that she has more than moderate limitations in any Paragraph B category." Tr. 1241. Although the pertinent analysis "occurred outside of the step-three section of the ALJ's decision," it does not warrant remand. *Joyce H. v. Kijakazi*, No. CDA-22-3152, 2023 WL 7554189, at *4 (D. Md. Nov. 14, 2023); *accord Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.").

Here, the ALJ considered the record evidence including Plaintiff's daily activities, the type and effectiveness of prescribed medications, the treatment Plaintiff received for her conditions, the mental health provider encounters, and other factors concerning Plaintiff's limitations due to her mental impairments. 20 C.F.R. § 416.929. The ALJ determined the extent to which Plaintiff's symptoms could reasonably be accepted as consistent with the objective medical evidence and found that the degree of Plaintiff's impairments was not supported by the totality of the evidence on the record. Plaintiff's argument amounts to a request to reweigh the evidence, which the Court

is not permitted to do. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."); *Sherry C. v. Kijakazi*, No. HBB-21-0009, 2022 WL 3587351, *7 (W.D. Ky. Aug. 22, 2022) (stating that it is the duty of the ALJ "to assess . . . Plaintiff" and because "tolerance of pain and other symptoms is a highly individualized matter, the conclusion of the [ALJ], who has the opportunity to observe the claimant's demeanor, should not be discharged lightly."). For these reasons, the Court concludes that the ALJ supported their evaluation of Listings 12.04, 12.06, and 12.15 with substantial evidence. 20 C.F.R. § 416.925(a).

> C. The ALJ did not commit harmful error when discounting the third-party function report.

The Court rejects Plaintiff's final argument, that the ALJ erroneously disregarded Mr. Wolhschlager's third-party function report. ECF 11, at 29. Section 416.927(f) concerns "[o]pinions from medical sources who are not acceptable medical sources [as defined in the regulations] and from nonmedical sources." 20 C.F.R. § 416.927(f). It provides that "[t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* § 416.927(f)(2). The regulations state that "[o]pinions from . . . nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions." *Id.* § 416.927(f)(1). Thus, "nonmedical opinions are to be considered using the same factors used to evaluate the opinions of medical sources[.]" *See id.* § 416.927(f)(1). However, "not every factor for weighing opinion evidence will apply in every case." *Id.*

The ALJ found that Mr. Wolhschlager's report was "generally supportive of [Plaintiff's allegations]." Tr. 1242. However, the ALJ noted that the report did not establish that Plaintiff was disabled, and, similar to Plaintiff's "allegations, [the report] is simply not consistent with the record as a whole[.]" Tr. 1242. The report contained "no unique information" and "was undermined by the same substantial record evidence that led the ALJ to discount [Plaintiff's] own testimony." *Melanie A. S. v. Kijakazi*, No. TNM-GMH-21-0185, 2022 WL 1721196, at *17 (D.D.C. May 12, 2022*), report and recommendation adopted*, No. TNM-21-0185, 2022 WL 1718987 (D.D.C. May 27, 2022).

SSA regulations permit an ALJ to consider evidence from a wide range of medical sources. *See, e.g.*, *Rogers v. Colvin*, No. 15-3921, 2016 WL 4626572, at *13 (S.D.N.Y. Sept. 6, 2016) (quoting former 20 C.F.R. § 404.1513(d)). Some courts have found ALJ decisions deficient for discounting a report because it was "not an acceptable medical source" and "not based on objective medical evidence." *See Mark B. v. O'Malley*, No. GMH-22-1080, 2024 WL 1071052, at *18 (D.D.C. Mar. 12, 2024) (collecting cases). The Fourth Circuit has not taken a position on whether discounting reports on this basis qualifies as harmful error.

The Court need not decide whether to apply such a standard—which is more favorable to Plaintiff—because even if it did, reversal is not warranted. Mr. Wolhschlager's testimony set forth

the same limitations Plaintiff described. The ALJ rejected those limitations and supported that decision with substantial evidence. *See Amos v. Berryhill*, No. 17-1707, 2019 WL 4044277, at *12 (D.D.C. June 3, 2019) (concluding that it was not error for the ALJ to fail to explain the weight he assigned to the lay witness' testimony, as it was clear that it was undermined by the same evidence that led the ALJ to discount Plaintiff's own testimony), *report and recommendation adopted sub nom. Amos v. Saul*, 2019 WL 3451313 (D.D.C. July 31, 2019); *Melanie A. S.*, WL 1721196, at *17 (finding the ALJ's error harmless when the ALJ failed to explain the weight he assigned to Plaintiff's mother's testimony because it was clear it was discounted by the record evidence); *Mark B*, 2024 WL 1071052, at *18 (finding that even if the ALJ's stated reason for discounting Plaintiff's mother's third party report was erroneous, any error may be harmless). As such, the ALJ did not commit reversible error.

## V.     **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge